## J. S. DOWELL, ADMINISTRATOR, v. COLLIN COUNTY NATIONAL BANK OF McKINNEY.

### Decided February 12, 1910.

**1.—Gambling Transaction—Notice to Corporation—Insufficient Evidence.**

That some of the officers of an incorporated oil mill company, who were also officers and directors in an incorporated bank, knew of or conducted transactions in futures for and in behalf of the mill, would not make the bank a participant in said transactions or responsible for its officers when acting alone for the oil mill company, it not appearing that the respective boards of directors of the bank and the mill knew of, sanctioned or took any action whatever concerning said transactions. This rule applied in a suit by a bank upon promissory notes executed by a stockholder in an oil mill company, the defense being that the notes were given to carry on dealings in futures and were therefore invalid.

**2.—Estates—Authentication of Claim.**

The cashier of a bank having conducted a transaction between the bank and a decedent and therefore cognizant of all the facts, is the proper party to make affidavit to a claim against the decedent's estate, growing out of said transaction. A corporation can only make affidavit by an officer and the affidavit of the officer in the case will be considered as the affidavit of the owner of the claim.

**3.—Same—Affidavit.**

An affidavit to a claim against an estate "that there are no offsets, credits or payments due on the same," and that a certain amount is due thereon, is equivalent to saying that all legal offsets, payments and credits known to affiant have been allowed.

Appeal from the District Court of Collin County. Tried below before Hon. J. M. Pearson.

*Smith & Wilcox*, for appellant.—The bank could not recover its gambling debt against the oil mill company. Jones v. Akin, 80 S. W., 385; Reed v. Brewer, 90 Texas, 144; American Nat'l Bank v. Cruger, 91 Texas, 446; Kottwitz v. Alexander, 34 Texas, 689; Sondheim v. Gilbert, 5 L. R. A., 434, and authorities there cited; Jackson v. City Nat'l Bank, 9 L. R. A., 659.

The affidavit is not sufficient for the reason that it does not state that the affiant is cognizant of the facts contained in his affidavit, as is required by article 2072 of our statutes, and does not state that all legal offsets, payments and credits known to affiant have been allowed. If the administrator had allowed said notes as a claim against the estate with such an affidavit, such allowance would have been null and void. Rev. Stats., art. 2075; Anderson v. Cochran, 93 Texas, 583.

*Abernathy, Abernathy & Abernathy*, for appellee.—J. P. Griffin and the other stockholders of the McKinney Cotton Oil Mill Company having guaranteed to the bank that they would pay to the bank whatever balance might be due the bank at the end of the season, and the bank upon such guarantee having extended a line of credit of $100,000 to said McKinney Cotton Oil Mill Company, upon which such company checked during the season in the due course of business, and at the end of the season having adjusted their own losses among themselves, and each one having agreed to pay his pro rata share, and J. P. Griffin having agreed to pay his, and having borrowed the money from the bank and given his notes for it, J. P. Griffin can not resist payment of the notes.

The affidavit complied with the law in that it informed the administrator of the nature and character of the claim and of the amount that is due, and that all of said payments and credits had been allowed, and that the claim was just. Gaston v. McKnight, 43 Texas, 625; Crosby v. McWillie, 11 Texas, 47; Heath v. Garrett, 46 Texas, 25; Etter v. Dugan, 1 Posey U. C., 180; Trigg v. Moore, 10 Texas, 99; Dunn v. Sublett, 14 Texas, 261.

RAINEY, CHIEF JUSTICE.—This suit was brought by the Collin County National Bank against J. S. Dowell, administrator of the estate of J. P. Griffin, deceased, to recover on three promissory notes executed by said Griffin during his lifetime, aggregating $3,011.50.

The defendant plead that Griffin was a stockholder in the McKinney Cotton Oil Mill Company, and that said mill company had lost money in dealing in cotton futures, which money had been advanced to it by the bank knowing of said gambling deals; that Griffin

had executed said notes to liquidate in part the said indebtedness to the bank, and that there was a want of consideration for the execution of said notes. The court instructed a verdict for the bank and judgment was entered accordingly, from which the appeal was taken.

At the beginning of the ginning season of 1904 and 1905 the bank extended to the mill company a line of credit for $100,000, the stockholders of the mill company agreeing to hold the bank harmless. The bank honored the mill company's checks during the season, and at the close of the season there was an indebtedness of $62,000 due the bank by the mill company. In arranging this indebtedness the mill company executed a deed of trust to J. R. Gough to secure $50,000, and the bank was to carry the remainder. The directors of the mill company, in order to settle said debt, held a meeting for the purpose of getting the stockholders to agree to assess themselves, but two of the stockholders objected to being assessed, thereupon a committee was appointed to get the objecting members to agree to such assessment. The minutes show no further meeting for this purpose, but there was a fifty percent assessment of the stock paid on said indebtedness. To secure the money to pay his fifty percent Griffin executed his said three notes to the bank, the amount of same being placed to his credit, and he drew a check in favor of Gough for same, which the bank honored. During the season 1904-1905 the mill company lost money, and during that time it dealt some in cotton futures through Jesse Shain, its assistant manager. Jesse Shain was president of the Collin County National Bank, J. L. White was its cashier and active manager, and J. S. Heard one of its stockholders. The three parties last named were also on the board of directors of the McKinney Cotton Oil Mill Company, J. S. Heard being its president and manager. The mill company owned five or six ginning plants in Collin County and did a large business. About the time the dealing in futures commenced the oil mill company had on hand about 1,800 bales of spot cotton. This cotton was sold and futures carried, but no record was kept on the books of the company as to future transactions.

The contention of the appellant is, in effect, that the notes sued on were given to liquidate in part a gambling transaction, the nature of which was known to and participated in by the bank, rendering the notes void. We are of the opinion that the evidence totally fails to show that the bank participated in the illegal transactions of buying futures by the oil mill company, or had such knowledge thereof as to make it responsible therefor.

The bank in the beginning had extended to appellant a line of credit and cashed its checks until the end of the season, at which time there was due it by the oil mill company $62,000. The evidence failed to show that the bank participated in any way in any future deals, or that it paid any check of which it had knowledge that was issued by appellant to pay any loss sustained by appellant in any future transaction. The oil mill company sold about 1,800 bales of spot cotton to carry on future deals, and the proceeds of this cotton and money arising from legitimate transactions may have been expended by appellant to buy futures, and the checks drawn by the mill

company on the bank may have been for legitimate expenses of the operation of the mill company's plants. That some of the officers of the appellant, who were also officers and directors of the bank, conducted or knew of the future transactions of the oil mill company, did not make the bank a participant in said future transactions or responsible for its officers who were acting alone for the oil mill company. It is not shown that the board of directors of the bank knew of or sanctioned the dealing in futures. No action whatever is shown to have been taken by said board in relation thereto. Nor does it appear that the board of directors of the oil mill company ever formally authorized the dealing in futures, or that the board's attention was ever called to such dealings until the end of the season, when the discussion of the raising of money to settle with the bank arose, though some of the members had discussed the matter on the streets. After a consideration of all the evidence, we think the defense of illegal consideration is not proven, and the court properly instructed a verdict for plaintiff.

Another contention is that the claim was not properly authenticated, and therefore plaintiff is not entitled to recover. The affidavit attached to said claim is as follows:

"State of Texas, County of Collin:

"Before me, W. R. Abernathy, a notary public in and for Collin County, Texas, on this day came and personally appeared J. L. White, who says that he is the cashier of the Collin County National Bank and is authorized to make this affidavit; that the three notes hereto attached, each dated July 1, 1905, one for $1,000, due on or before two years after date; one for $1,011.50, due on or before one year after date; one for $1,000, due on or before three years after date, with interest thereon, are just, due and unpaid, and that there are no offsets, credits or payments due upon the same; that the sum of $3,011.50, together with eight percent interest from July 1, 1905, is due thereon, and ten percent of interest and principal as attorney's fees. J. L. White, Cashier.

"Subscribed to and sworn to before me this Jan. 18, 1907. W. R. Abernathy, Notary Public, Collin County, Texas."

No objection was made to the form of the affidavit, but the administrator rejected the claim and endorsed thereon the following: "The within claims and three notes attached presented to me as a claim against the estate of J. P. Griffin, deceased, Feb. 11, 1907, for allowance, and the same is rejected in full. This the 11th day of February, 1907. J. S. Dowell, Administrator of the Estate of J. P. Griffin, deceased."

The only objection to said authentication is: First, that it does not state that the affiant is cognizant of the facts therein contained, it appearing that he is not the owner of the claim; and second, that all legal offsets, payments and credits known to affiant have been allowed.

The bank was a corporation; therefore, could make no affidavit except by its officer, whose act was the act of the bank. The cashier, White, had conducted the transaction for the bank, was cognizant of all the facts, and the law under these circumstances will consider the

affidavit as made by the owner. The expression "that there are no set-offs, credits or payments due on the same," and that "the sum of $3,011.50, together with eight percent interest from July 1, 1905, is due thereon," etc., is equivalent to saying that all legal offsets, payments and credits known to affiant have been allowed. The affidavit is a substantial compliance with the statute in such cases provided, and the claim being rejected without the objection to want of form, the appellee was entitled to recover on the notes.

There was no error in refusing the charges requested by appellant, and the judgment is affirmed.

*Affirmed.*

· Writ of error refused.